**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA GOODEN, | ) | CASE NO. 1:12CV2918 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CITY OF BRUNSWICK, et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| | ) | |
| | ) | |

This matter is currently before the Court for consideration of the Motion for Summary

Judgment of Defendants Brian Mummert, Steven Hoover, and Carl DeForest. [1] (Doc. No. 20.)

For the following reasons, this Motion is GRANTED.

**I.  Procedural Background**

On October 19, 2012, Plaintiff Joshua Gooden ("Gooden") filed a Complaint in the Court

of Common Pleas of Medina County, Ohio, against the City of Brunswick; Brunswick Police

Chief Carl DeForest; Brunswick Police Officers Brian Mummert, James Keaveney, Robert

---

[1]  This case is before the Court pursuant to the consent of the parties, entered March 21,
2013.  (Doc. No. 11.)

Casenhiser, and Steve Hoover; and, Charlene Gooden.[2]  (Doc. No. 1-1.)  The Complaint set forth

claims under 42 U.S.C. § 1983 for violation of Gooden's rights under the Fourth, Fifth, and

Fourteenth Amendments, as well as for failure to train and supervise.  In addition, the Complaint

asserted state law claims for malicious prosecution, false arrest, false imprisonment, abuse of

process, and defamation and slander.  (Doc. No. 1-1.)  On November 26, 2012, Defendants City

of Brunswick, DeForest, Mummert, Keaveney, Casenhiser and Hoover (hereinafter "the City of

Brunswick Defendants") removed Plaintiff's action to this Court.  (Doc. No. 1.)  These

Defendants thereafter filed an Answer on January 4, 2013.[3]  (Doc. No. 4.)

On April 23, 2013, the Court conducted a Case Management Conference, at which certain

discovery and dispositive motion deadlines were set.  (Doc. No. 13.)  Of particular relevance

herein, the Court ordered that "[d]iscovery necessary for the City of Brunswick Defendants to

file a dispositive motion on the basis of qualified immunity shall be completed on or before June

28, 2013." (Doc. No. 13 at 2.)  The Court further ordered that "[a]fter the Court rules on any

such dispositive motion, the Court will allow further discovery if needed."  (Doc. No. 13 at 2.)

At that time, the Court also set a dispositive motions deadline of July 31, 2013.  (Doc. No. 13 at

2.)

Upon motion of the Plaintiff, the Court later extended the deadline for discovery necessary

---

[2] The parties stipulated to the dismissal of Defendants Keaveney and Casenhiser on
September 26, 2013.  (Doc. No. 19.)

[3] Defendant Charlene Gooden filed two Answers in state court, on November 16, 2012
and November 30, 2012, which simply stated "I am not guilty." (Doc. Nos. 5-2, 5-3.)  After the
case was removed, Ms. Gooden filed an Answer in this Court, in which she again stated "I am
not guilty." (Doc. No. 12.)  On June 7, 2013, this Court appointed *pro bono* counsel for Ms.
Gooden.  (Doc. No. 14.)  Thereafter, and with leave of Court, Ms. Gooden filed an Amended
Answer through counsel.  (Doc. No. 17.)

for the City of Brunswick Defendants to file a dispositive motion to August 12, 2013.  The

dispositive motion deadline was extended to September 16, 2013 and, later, extended again to

September 30, 2013. (Doc. No. 18.)

On September 30, 2013, Defendants Mummert, Hoover and DeForest filed a "Motion for

Summary Judgment Based Upon Qualified Immunity."  (Doc. No. 20.)  Plaintiff filed a Brief in

Opposition on October 30, 2013 (Doc. No. 21); and the moving Defendants replied on

November 13, 2013.  (Doc. No. 23.)

## II.  Factual Allegations

On October 21, 2011, Defendant Charlene Gooden went to the City of Brunswick Police

Department and reported she had been physically attacked by her husband, Plaintiff Joshua

Gooden.  (Mummert Aff. at ¶ 3.)  Defendant Mummert was on-duty at the time, and was

assigned to take the report.  (Mummert Aff. at ¶ 3.)

According to her written statement,[4] Ms. Gooden and Plaintiff were married but had

separated approximately two and one half months previously.  (Doc. No. 21-4 at 1.)  They had

two minor children.  *Id.*  On the night in question, the children were staying with Plaintiff at a

home owned by Aicheh Almeraisi.  *Id.*  In her statement, Ms. Gooden indicated she was

---

[4] Defendants rely upon the Affidavit of Officer Mummert (attached to their Motion) in
detailing the content of Ms. Gooden's oral and written report regarding the October 21, 2011
incident.  Plaintiff objects to this Affidavit to the extent it "relays facts and occurrences which
[Mummert] could have no knowledge of."  Plaintiff maintains that "[t]o the extent that Officer
Mummert's affidavit relies on information beyond the scope of his personal knowledge, Plaintiff
respectfully objects and requests that such information not be considered by this Honorable
Court in determining the appropriateness of Defendants' motion for summary judgment." (Doc.
No. 21 at 1-2.)  The Court notes Plaintiff has attached a copy of Ms. Gooden's written statement
as an Exhibit to his Brief in Opposition. (Doc. No. 21-4.)  In light of Plaintiff's concerns, the
Court will rely on the content of Ms. Gooden's written statement in recounting the information
that she reported to Officer Mummert regarding the incident in question.

concerned that Plaintiff's girlfriend, "Becky," would also be present.  *Id*.  Ms. Gooden reported

she did not want "Becky" around the children, as it "upsets them."  *Id*.  Ms. Gooden called the

home owner, Ms. Almeraisi, to express her concerns.  *Id*.  Ms. Almeraisi then called her

daughter Eman, who was Plaintiff's roommate, to ask if "Becky" was at the residence.  *Id*.  Ms.

Gooden reported that, shortly thereafter, Plaintiff called and yelled at her for inquiring about

"Becky."  *Id*.  Ms. Gooden then "got off the phone with [Plaintiff]" and decided to "go check on"

the children.  *Id.*

Ms. Gooden reported to Defendant Mummert that, when she arrived at the residence,

Plaintiff "told me to go outside."  (Doc. No. 21-4 at 1.)  Ms. Gooden stated that she "walk[ed] up

the steps," and she and Plaintiff began arguing about his relationship with "Becky."  *Id*. at 1-2.

She indicated that "[Plaintiff] got mad for what I said" and "put his hands around my neck."  *Id.*

at 2.  Ms. Gooden reported she yelled for help, at which time Plaintiff "took his hands off my

neck, grab[bed] my arms, and threw me out of the house."  *Id.*  Ms. Gooden stated she then ran

to her car.  She claimed Plaintiff ran after her, grabbed on to the driver's side window, and

"punched" her front windshield "with his bare hand." *Id.*  Ms. Gooden stated she drove directly

to the Brunswick Police Department, at which time she noticed a crack in her windshield from

where Plaintiff had punched it. *Id.*

Defendant Mummert spoke with Ms. Gooden when she arrived at the police station, and

took her statement.  He avers that Ms. Gooden was "visibly upset and shaken" when recounting

her version of events.  (Mummert Aff. at ¶ 6.)  He states he looked at her neck and arms "in

order to document any visible bruises caused by the assault but did not observe any."  *Id.* at ¶ 7.

He also examined the windshield of Ms. Gooden's vehicle, and "observed a small 'spider' crack

4

along the left edge of the window." *Id*. at ¶ 8.   Defendant Mummert avers that "[w]hile I think it was unlikely that Joshua Gooden caused the crack solely with his bare hand, it did not refute that Joshua may have struck the windshield with an object in his hand or that the small crack already existed and Charlene did not notice it until after Joshua struck the windshield with his fist." *Id*. In any event, Mummert states he "reasonably believed Joshua struck the windshield as indicated by Charlene, even though it was unlikely that he caused the crack with his bare hand." *Id*.

After having Ms. Gooden prepare a written statement, Mummert reported the information he had gathered to his supervisor, Defendant Hoover.  (Doc. No. 20-1 at ¶ 10.)  Hoover instructed Mummert to conduct a criminal record check on Plaintiff.  *Id*.  In doing so, Mummert learned Plaintiff had previously been convicted of domestic violence.  *Id*. at ¶ 11.  Mummert reported Plaintiff's previous conviction to Defendant Hoover and, further, indicated that he (Mummert) believed Ms. Gooden was being truthful about being assaulted by Plaintiff.[5]  *Id*.  As a result, Mummert believed probable cause existed to charge Plaintiff with domestic violence. *Id*.  Hoover agreed.  *Id*.

Mummert avers that, because Plaintiff had previously been convicted of domestic violence, the charge against him as a result of the October 21, 2011 incident was a felony.  (Doc. No. 20-1 at ¶ 12.)  Ms. Gooden confirmed to Defendant Mummert that she wished to proceed with the felony charge.  *Id*.  Mummert then signed a complaint charging Plaintiff with felony domestic

---

[5] As discussed in more detail *infra*, Officer Mummert testified regarding this incident during a Domestic Violence Civil Protection Order Hearing held in the Medina County Court of Common Pleas, Domestic Relations Division in November 2011.  When asked during that hearing whether he believed Ms. Gooden was truthful, Officer Mummert testified as follows: "At times. It's hard to tell. I never want to doubt a victim of domestic violence.  Um, but there were just certain parts of the story that I just didn't feel completely comfortable with." (Doc. No. 21 at Exh. 2, 6:15 to 6:28.)

violence in violation of Ohio Rev. Code § 2919.25(A)(D)(1)(3).  *Id.* at ¶13.  Mummert also

states that an arrest warrant was issued by a deputy clerk of the Medina Municipal Court.  *Id*.

*See also* Doc. No. 20-1 at 9.

     Mummert then proceeded to the Almeraisi residence in order to execute the arrest warrant

for Plaintiff.  When he arrived, Mummert spoke with Plaintiff regarding Ms. Gooden's

allegations.  According to Mummert's police report, Plaintiff described the incident as follows:

> Joshua stated that Charlene . . . barged into the house uninvited and searched
> every room as if she was looking for Joshua's girlfriend, Becky.  Joshua stated
> that he told Charlene that she does not live here and had to leave.  Joshua stated
> that Charlene started to leave but stopped in the threshold of the door and then
> tried to push her way back into the residence, at which time he reached out and
> placed his left hand on her right shoulder in an attempt to stop her and to guide
> her out of the door.  Joshua stated that Charlene immediately yelled ouch and
> tried to throw herself to the ground as if he had struck her.  Joshua stated he took
> a step back and stated, "I did not hurt you, I did not hit you."  Joshua stated his
> son * * *, daughter * * * , and Eman's son * * * along with Eman were all
> present in the residence during this incident.  Joshua stated that Charlene stepped
> out of the door and he grabbed her shoes and threw them out on the front steps
> and once again told her she had to leave.  Joshua stated he walked her to her car
> and as she got in and closed the door he tried talking to her, asking her why she
> was acting like this.  Joshua stated her window was half way down and as he was
> leaning on it she stated that he had to move, started the car, turned the wheel and
> quickly reversed which resulted in him having to push off the car to prevent him
> from getting his feet run over.  I specifically asked Joshua if he placed his hands
> anywhere else on Charlene's body beside her shoulder and he stated "not at all."
> I also asked if he had at any time had his hands near or around Charlene's neck
> and he stated no.  I also asked if he was trying to cause physical harm to
> Charlene at any time during his contact with her this evening and he stated "no, I
> just wanted her to leave."

(Doc. No. 21-1 at 6.)  Plaintiff then prepared a written statement to the same effect.  (Doc. No.

21-5.)

     Mummert's police report also indicates he spoke with the Goodens' children and Plaintiff's

roommate Eman.  (Doc. No. 21-1 at 6.)   According to this report, the Goodens' son was not in a

6

position to see whether there was any physical contact between Plaintiff and Ms. Gooden.  *Id.*
The Goodens' daughter indicated Plaintiff asked Ms. Gooden to leave; Ms. Gooden refused to do
so; and, she saw Plaintiff reach out and touch Ms. Gooden by the shoulder while they were
standing near the front door.  *Id.*  The Goodens' daughter indicated she did not observe Plaintiff
place his hands around Ms. Gooden's neck.  *Id.*  Eman reported to Mummert that Plaintiff never
struck Ms. Gooden but did "grab her by the arm in an attempt to get her to leave the residence
since she was not complying with Joshua's request for her to leave."  *Id.*

At that point, Mummert arrested Plaintiff and transported him to the Brunswick Police
Department where he was booked on a felony domestic violence charge.  (Doc. No. 20-1 at ¶
16.)  Plaintiff was then transported to the Medina County Jail, where he remained in custody
until he was released on October 24, 2011.  (Doc. No. 21-1 at 7, 9.)  On November 4, 2011,
Plaintiff waived a preliminary hearing and consented to be bound over to the Grand Jury.  (Doc.
Nos. 26-1, 26-2.)  The Medina County Grand Jury did not issue an indictment against Plaintiff
and, on November 8, 2011, the State moved to dismiss the charge.  (Doc. No. 21-7.)  The
Medina County Court of Common Pleas dismissed the case the following day.  (Doc. No. 21-6.)

### III.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and states:

> A party may move for summary judgment, identifying each claim or defense – or the
> part of each claim or defense  – on which summary judgment is sought.  The court
> shall grant summary judgment if the movant shows that there is no genuine dispute as
> to any material fact and the movant is entitled to judgment as a matter of law.

In considering summary judgment motions, this Court must view the evidence in a light most
favorable to the non-moving party to determine whether a genuine issue of material fact exists.
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  A fact is "material" only if its resolution will

7

affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id*.   "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."  *Anderson*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).  When ruling on a motion for summary judgment, "a judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"  *Anderson*, 477 U.S. at 252 (citations omitted); *accord Fuller v. Landmark 4*

8

*LLC*, 2012 WL 1941792 (N.D. Ohio May 29, 2012).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter ...."  *Anderson*, 477 U.S. at 249.  "It is an error for the district court to resolve credibility issues against the nonmovant."  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).

### IV.  Law and Analysis

#### A.        Federal Claims

Plaintiff alleges the following federal claims against Defendants Mummert, Hoover, and DeForest pursuant to 42 U.S.C. § 1983.  In Count One, Plaintiff alleges he was "arrested, detained, charged and prosecuted in violation of Plaintiff's civil and fundamental rights," including his right to equal protection under the Fourteenth Amendment; right to be free from unreasonable searches and seizures under the Fourth Amendment; right to due process of law under the Fifth Amendment; and, his "fundamental right to privacy."  (Doc. No. 1-1 at ¶ 46.)  In Count Two, Plaintiff asserts the moving Defendants violated his federal equal protection rights by "apply[ing] a policy of making an arrest in all cases of domestic violence which resulted in Plaintiff's wrongful arrest based on his gender."  *Id*. at ¶¶ 54-55.  In Count Three, Plaintiff claims that moving Defendants Hoover and DeForest are liable under § 1983 under a theory of failure to adequately train and supervise.  *Id.* at ¶ 62.

Although unclear, it appears these claims are asserted against Defendants Mummert, Hoover, and DeForest in both their individual and official capacities.  *Id*. at ¶ 9.  The instant Motion, however, seeks summary judgment in these Defendants' favor solely on the basis of

qualified immunity and, therefore, addresses Plaintiff's individual liability only.[6]

### 1.     False Arrest/False Imprisonment Claim (Count I)

To maintain a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140.

Plaintiff first claims he was arrested and imprisoned without probable cause in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.  (Doc. No. 1 at ¶¶ 13-48.)  In their Motion for Summary Judgment, the moving Defendants argue, summarily, that "Officer Mummert clearly had probable cause for the arrest of Joshua Gooden based upon the statement of Charlene Gooden implicating Joshua Gooden in the domestic violence." (Doc.

---

[6]  The Sixth Circuit has held that the qualified immunity defense does not apply to municipalities or to official capacity claims against government officials.  *See Everson v. Leis,* 556 F.3d 484, 493 n. 3 (6th Cir. 2009) (finding qualified immunity defense applied only to individual capacity claims and not to plaintiff's official capacity claims because "the only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess"); *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) ("The qualified immunity defense is not available to municipalities or to persons acting on behalf of municipalities . . . when sued in their official capacity only"); *Smith v. Leis,* 2011 WL 463540 at * 7-8 (6th Cir. Feb. 10, 2011) (finding qualified immunity defense did not apply to official capacity claims against police officer defendants). *See also Martin v. City of Broadview Heights*, 2011 WL 3648103 at * 8 (N.D. Ohio Aug. 18, 2011) ("The City, as a municipality, may not assert a qualified immunity defense against Plaintiffs' federal claims").

10

No. 20 at 14.)  They note Officer Mummert arrested Gooden pursuant to an arrest warrant and assert they are entitled to qualified immunity with respect to this claim because " a reasonable police officer in like circumstances could have reasonably believed that Gooden's arrest was lawful." (Doc. No. 20 at 18.)

Plaintiff argues Defendants Mummert, Hoover and DeForest did not have probable cause to arrest him.  First, Plaintiff asserts "Defendants have failed to specify how the alleged actions relate to the elements of the alleged offense [of domestic violence] or what facts support a determination that Charlene Gooden's complaint was trustworthy and credible."  (Doc. No. 21 at 9.)  Specifically, Plaintiff maintains there is no indication in Ms. Gooden's statement that Plaintiff intended to cause her any harm, which Plaintiff contends is an element of the offense of domestic violence.  Rather, Plaintiff asserts he was "attempting nothing more than to remove Defendant Charlene Gooden from his residence," noting Ms. Gooden "had no privilege to be in [his residence] and had been told to leave on multiple occasions."  *Id.*

Plaintiff next asserts that, under Ohio's "Castle Doctrine" codified at Ohio Revised Code §§ 2901.05/2901.09, he was entitled to the presumption of self-defense in removing Ms. Gooden from his residence.  He maintains the Castle Doctrine was clearly established law in Ohio at the time of his October 2011 arrest and that this law "presumes that Joshua Gooden acted in self-defense when he removed Charlene Gooden from his home and therefore no probable cause existed based on the facts as they were known to the Defendants when Officer Mummert swore out the warrant for Joshua Gooden's arrest."  (Doc. No. 21 at 20.)

Finally, Plaintiff claims that, even aside from the protections offered by operation of the Castle Doctrine, the moving Defendants lacked probable cause to arrest and imprison him

11

because Ms. Gooden was not credible and, therefore, further investigation was warranted.  (Doc. No. 21 at 9-10.)  Specifically, Plaintiff asserts the moving Defendants "knew a number of other facts at the time the decision was made to arrest which would undermine the credibility of Charlene Gooden's statement alone, without corroboration," including that (1) Ms. Gooden entered Plaintiff's residence without privilege to do so; (2) Ms. Gooden did not display any visible signs of injury; (3) Ms. Gooden's version of events was facially untruthful or, at best, inaccurate, particularly with regard to her allegation that Plaintiff broke her windshield with his bare fist; (4) Ms. Gooden expressed a potential motivation to lie; and, (5) Ms. Gooden's demeanor at the police station was suspicious.  *Id.* at 10-14.

Qualified immunity protects public officials from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Sixth Circuit follows a "two-tiered inquiry" to determine if an officer is entitled to qualified immunity.  *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012).  *See also Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  The first step is to determine whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated.  *See Pearson*, 555 U.S. at 232; *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009); *Pritchard v. Hamilton Township Board of Trustees*, 2011 WL 2039066 at * 5 (6th Cir. May 25, 2011).  The second is to ask if the right at issue was "clearly established" when the event occurred such that a reasonable officer would have known that his conduct violated it.  *Pearson,* 555 U.S. at 232.  *See also Martin*, 712 F.3d at 957.  The Supreme Court has explained that these two steps may be addressed in any

12

order. *Pearson*, 555 U.S. at 236. "But both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights." *Martin*, 712 F.3d at 957. If either one is not satisfied, qualified immunity will shield the officer from civil damages. *Id. See also Pearson*, 555 U.S. at 236.

Where, as here, a defendant moves for summary judgment based on qualified immunity, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Everson,* 556 F.3d at 494. *See also Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006); *Six v. Beegle*, 2013 WL 5707245 at * 5 (S.D. Ohio Oct. 18, 2013); *Caudill v. City of Kenton*, 2012 WL 1621372 at * 3 (N.D. Ohio May 9, 2012). As the Sixth Circuit has explained, the plaintiff has the initial burden of showing that a right is clearly established. *See Everson*, 556 F.3d at 494; *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004). However, the defendant carries the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time. *Everson*, 556 F.3d at 494. *See also Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004); *May v. Hamilton County, Ohio*, 2011 WL 5925544 at * 4 (S.D. Ohio Aug. 3, 2011). Moreover, "[w]hile the facts are normally taken as alleged by the plaintiff, facts that absolutely contradict the record will not be considered as claimed by the plaintiff." *Everson*, 556 F.3d at 494 (citing *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007)).

Here, Plaintiff bases his false arrest claim under § 1983 on an alleged violation of his rights under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

13

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST., Amend. IV. Thus, in order for Plaintiff to prevail on his claim of false arrest under § 1983, he must prove the Defendant police officers lacked probable cause to arrest him. *See Sykes v. Anderson,* 625 F.3d 294, 305 (6th Cir. 2010); *Everson,* 556 F.3d at 498; *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002); *Painter v. Robertson,* 185 F.3d 557, 559 (6th Cir. 1999); *Frodge v. City of Newport, Ohio,* 2012 WL 4773558 at * 6 (6th Cir. Oct. 5, 2012).

### a. Arrest Warrant

Prior to resolving the issue of whether probable cause existed to arrest Plaintiff under the circumstances presented, the Court must first determine whether Plaintiff was arrested pursuant to a facially valid warrant. In their motion, Defendants note Officer Mummert signed a complaint charging Plaintiff with felony domestic violence and "[a]n arrest warrant was issued by the Medina Municipal Court to arrest Joshua Gooden." (Doc. No. 20 at 10.) Defendants cite Sixth Circuit case law for the proposition that police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action unless the officers "stated a deliberate falsehood or acted with reckless disregard for the truth." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999). *See* Doc. No. 20 at 14, 18. Defendants make no effort to meaningfully develop this argument in the context of Plaintiff's federal claims, and do nothing more than state the legal argument and then assert summarily that Officers Mummert, Hoover and DeForest are entitled to qualified immunity. Giving Defendants the benefit of the doubt, however, it appears they intend to base their motion, at least in part, on the proposition that they are shielded from liability from Plaintiff's § 1983 claims on the basis of the arrest warrant secured from a Medina Municipal Court Deputy Clerk.

14

Plaintiff does not address this argument in the context of his federal claims.  In addressing Defendants' motion for summary judgment on his state law claim for false arrest, however, Plaintiff argues that "[a]t no time was the arrest warrant issued for Joshua Gooden approved or reviewed by a Judge, Magistrate, or other Court official at ANY TIME prior to, or after, Plaintiff Joshua Gooden's arrest."  (Doc. No. 21 at 22) (emphasis in original).  Without citing any authority, Plaintiff then asserts summarily that "[a]n arrest on a facially valid warrant is only a complete defense where the officer had no reason to doubt the validity of the warrant.  It is not applicable to situations where the officer was the sole cause of the warrant issuing." (Doc. No. 21 at 23.)

In their Reply Brief, Defendants do not directly address Plaintiff's argument.  Rather, Defendants simply reference the arrest warrant and state that "it cannot be said that Officer Mummert deliberately made any false statements or acted with reckless disregard for the truth." (Doc. No. 23 at 4.)

The Sixth Circuit has held that "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983."  *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143-144 (1979)).  *See also Richardson v. Nasser*, 2011 WL 1682881 at * 5 (6th Cir. May 5, 2011); *Carrasquillo v. City of Cleveland*, 2011 WL 3841995 at * 3 (N.D. Ohio Aug. 30, 2011).  However, an officer cannot rely on a facially valid warrant as satisfactory evidence of probable cause "when evidence exists that [the officer] intentionally [misled] or intentionally omitted information at a probable cause hearing for an arrest warrant provided that the misleading or omitted information is critical to the finding of probable cause."

15

*Voyticky*, 412 F.3d at 677, fn 4. *See also Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)
("An investigator may be held liable under § 1983 for making material false statements either
knowingly or in reckless disregard for the truth to establish probable cause for an arrest");
*Ahlers*, 188 F.3d at 373; *Richardson*, 2011 WL 1682881 at * 5.

Here, Plaintiff does not argue Defendants provided misleading information or intentionally
omitted information material to the finding of probable cause in procuring the arrest warrant at
issue. Rather, Plaintiff appears to argue the warrant is not "facially valid" because it was not
"approved or reviewed by a Judge, Magistrate or other Court Official." (Doc. No. 21 at 22.)
Plaintiff cites no legal authority in support of this position, and Defendants do not address this
argument in their Reply Brief.

In the Affidavit attached to Defendants' summary judgment motion, Officer Mummert
asserts he "signed the Complaint charging Joshua Gooden" with felony domestic violence, and
an arrest warrant was subsequently issued by the Medina Municipal Court. (Doc. No. 20-1 at ¶
13.) Mummert then authenticates copies of the Complaint and Warrant, which are attached to
his Affidavit as Exhibits B and C. *Id*. at ¶ 13. In its entirety, the Complaint signed by Officer
Mummert states as follows:

> Complainant, being duly sworn states that, Joshua A. Gooden, at 978
> Buttonwood, in the City of Brunswick, 44212, Medina County, Ohio on or about
> October 21st, 2011, did knowingly cause or attempt to cause physical harm to a
> family or household member, to wit: wife, Charlene Gooden this being a felony
> of the 4th degree as Joshua A Gooden has been previously convicted of Domestic
> Violence in Cleveland Municipal Court (Reference Case #07CRB026075) in
> violation of Section 2919.25(A)(D)(1)(3) of the O.R.C. DOMESTIC
> VIOLENCE.

(Doc. No. 20-1 at p. 8.) In addition to Officer Mummert's signature, the Complaint contains the
signature of the deputy clerk, attesting the Complaint was "sworn to and subscribed before me

16

by Ofc. B. Mummert #14 on October 21st, 2011." *Id.*

Also attached to Officer Mummert's Affidavit is a document captioned "Warrant on Complaint (Rule 4)" and signed by a deputy clerk of the Medina Municipal Court. (Doc. No. 20-1 at p. 9.) It states as follows:

> TO ANY LAW ENFORCEMENT OFFICER,
>
> A complaint, a copy of which is attached hereto, has been filed in this court charging Joshua A. Gooden with DOMESTIC VIOLENCE, in violation of Section 2919.25(A)(D)(1)(3) of the O.R.C.
>
> You are ordered to arrest Joshua A. Gooden and bring him before this court without unnecessary delay.
>
> You may not issue summons in lieu of arrest under Rule 4(A)(2) or issue summons after arrest under Rule (F) because it is doubtful that the defendant will appear in court if summoned.

(Doc. No. 20-1 at p. 9.) Defendants do not argue, and there is no evidence to suggest, that the deputy clerk relied on anything other than the Complaint in issuing the above warrant.

The Court rejects Plaintiff's argument that the arrest warrant at issue herein is facially invalid because it was approved, reviewed, and signed by a Medina Municipal Court deputy clerk, rather than a judge or magistrate. Relying on *Shadwick v. City of Tampa*, 407 U.S. 345 (1972), the Sixth Circuit has made clear that "[s]tate law determines what person is allowed to approve what warrant." *United States v. Master*, 614 F.3d 236, 240 (6th Cir. 2010). Here, Ohio law expressly permits a clerk of court to issue an arrest warrant. Specifically, Ohio Rule Crim. P. 4(a)(1) provides as follows:

**(A) Issuance**

*(1) Upon complaint.* If it appears from the complaint, or from an affidavit or

17

> affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant . . . shall be issued by a judge, magistrate, **clerk of court**, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

Ohio R. Crim. P. 4(A)(1) (emphasis added).  *See also State v. Fairbanks*, 32 Ohio St.2d 34, syllabus ¶ 3 (Ohio 1972) ("A warrant of arrest issued, under favor of R.C. 2935.08, by the clerk of courts, a nonjudicial officer, does not violate a defendant's rights under the Fourth Amendment of the United States Constitution which guarantees that a warrant will not issue except upon probable cause"); *State v. Jones*, 2012 WL 1035017 at ** 3-4 (Ohio App. 7th Dist. March 20, 2012) (finding deputy clerk of court could issue arrest warrant).

While the Supreme Court has acknowledged that a judge or lawyer might "normally provide the most desirable review of warrant requests," it found that states are entitled to "flexibility and leeway" in determining who has the authority to issue warrants.  *Shadwick*, 407 U.S. at 353-354.  *See also Masters*, 614 F.3d at 240.  In the instant case, the State of Ohio has determined that clerks of court have the authority to issue felony arrest warrants upon a finding of probable cause.  Thus, this Court cannot say that the arrest warrant at issue is facially invalid merely by virtue of the fact it was approved by a Medina Municipal Court Deputy Clerk.[7]

---

[7] Plaintiff does not argue the warrant herein is invalid because Officer Mummert failed to present sufficient information to the deputy clerk to support an independent judgment that probable cause existed.  *See Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 564 (1971) (holding that "before a warrant for either arrest or search can issue . . . the judicial officer issuing such a warrant [must] be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant").  *See also United States v. Fachini*, 466 F.2d 53, 56 (6th Cir. 1972); *Webb v. Greene County Sheriff's Office*, 494 F.Supp.2d 779, 792 (S.D. Ohio 2007); *United States v. Alfaro*, 2008 WL 5378363 at * 5-6 (S.D. Ohio Dec. 24, 2008); *Sampson v. City of Xenia*, 108 F.Supp.2d 821, 836-837 (S.D. Ohio 1999). Thus, the Court deems this issue waived and will not address it.

Indeed, faced with similar circumstances, other district courts within this Circuit have found arrest warrants issued by clerks of court to be facially valid.  *See e.g. Carrasquillo*, 2011 WL 3841995 at * 4 (noting that "[d]espite this Court's doubts as to whether careful consideration is given probable cause determinations when a municipal court clerk or deputy clerk– in lieu of a judge or magistrate– renders a felony arrest warrant, Ohio law expressly permits a clerk of court to issue felony warrants, trusting they will not merely rubber-stamp a police officer and prosecutor's probable cause findings"); *Sampson v. City of Xenia*, 108 F.Supp.2d 821, 836 (S.D. Ohio 1999) (holding that, "[u]nder Ohio law, a clerk of courts or deputy clerk of courts may make a probable cause determination and issue an arrest warrant"); *OPW Fueling Components v. Works*, 2007 WL 1406956 at * 8 (S.D. Ohio May 9, 2007).  Accordingly, the Court finds this argument to be without merit.[8]

### b.    Affirmative Defense

As noted above, an arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment pursuant to § 1983.  *See Voyticky*, 412 F.3d at 677; *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Collins v. Clancy*, 2014 WL 197839 at * 6 (S.D. Ohio Jan. 15, 2014) ("The issuance of an arrest warrant ordinarily demonstrates the existence of probable cause that would defeat a claim of false arrest").  However, an officer may still be held liable under § 1983 for such claims, even in light of a facially valid warrant, "when evidence exists that [the officer] intentionally misled or

---

[8]  In *Shadwick*, the Supreme Court found that an individual with authority to issue an arrest warrant must meet two tests: "[h]e must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick*, 407 U.S. at 350.  Plaintiff herein does not argue that the deputy clerk who signed his arrest warrant failed to satisfy either of these tests.

intentionally omitted information at a probable cause hearing for an arrest warrant provided that the misleading or omitted information is critical to the finding of probable cause." *Voyticky*, 412 F.3d at 677, fn 4.  *See also Sykes*, 625 F.3d at 305; *Vakilian,* 335 F.3d at 517; *Richardson,* 2011 WL 1682881 at * 5; *Ahlers,* 188 F.3d at 373 (6th Cir. 1999); *Carrasquillo*, 2011 WL 3841995 at * 3.

Plaintiff herein does not argue the moving Defendants provided misleading information or intentionally omitted information that was material to the finding of probable cause in procuring the arrest warrant at issue.  Rather, Plaintiff's primary argument is that the Defendants lacked probable cause to arrest him in light of (1) Ohio's Castle Doctrine; and, (2) inconsistencies in Ms. Gooden's statement to police that allegedly should have prompted Defendants to conduct a further investigation.  It is not entirely clear why these issues are relevant where, as here, the defendant officers acted pursuant to a facially valid arrest warrant and Plaintiff does not argue Defendants provided misleading information in procuring that warrant.  However, as both parties argue these issues at length, the Court will address them herein.

"'Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.'" *Logsdon*, 492 F.3d at 341 (quoting *Michigan v. DeFillipo*, 443 U.S. 31, 36 (1979)).  *See also Rhodes v. Pittard*, 2012 WL 2302266 at * 2 (6th Cir. June 19, 2012).  Here, Plaintiff was arrested for domestic violence under Ohio Rev. Code 2919.25(A)(D)(1)(3).  (Doc. No. 20-1 at pp. 8-9.)  This offense is defined as follows:

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
>
>   * * *
>
> (D)(1) Whoever violates this section is guilty of domestic violence, and the court

20

shall sentence the offender as provided in divisions (D)(2) to (6) of this section.

* * *

(3) Except as otherwise provided in division (D)(4) of this section, if the offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic violence, a violation of section 2903.14, 2909.06, 2909.07, 2911. 12, 2911.211, or 2919.22 of the Revised Code if the victim of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense, a violation of division (A) or (B) of this section is a felony of the fourth degree . . .

Ohio Rev. Code 2919.25(A)(D)(1)(3).

Defendants argue they had probable cause to arrest Plaintiff under this statute based on the facts and circumstances known to them at the time of the arrest.  Specifically, Defendants emphasize the following allegations in Charlene Gooden's written statement, which was provided to the police on the night of the incident: (1) Ms. Gooden was married to Plaintiff; (2) Plaintiff  became verbally abusive to Ms. Gooden, put his hands around her neck, grabbed her arms, and "threw [her] out of [Plaintiff's] house;" (3) Plaintiff followed Ms. Gooden outside of the house to her car and grabbed on to the driver's side window; and, (4) Plaintiff punched Ms. Gooden's front windshield "with his bare hand." (Doc.No. 20-1 at 6-7.)  Defendants also rely on Officer Mummert's averment that he conducted a criminal record check on Plaintiff and discovered Plaintiff had previously been convicted of domestic violence. (Doc. No. 20-1 at ¶ 10.)  Based on the above, Defendants maintain "a reasonable police officer in like circumstances could have believed that Gooden's arrest was lawful" and, therefore,  probable cause existed to

arrest him. (Doc. No. 20-1 at 18.)

Plaintiff argues probable cause was lacking because an affirmative defense was available to him under Ohio's Castle Doctrine, codified in Ohio Revised Code Sections 2901.05(B)(1) and 2901.09(B).  These statutes provide as follows.  Section 2901.05(B)(1) states that "a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force."  Pursuant to §  2901.05(B)(3), this presumption is "a rebuttable presumption and may be rebutted by a preponderance of the evidence." Ohio Rev.Code § 2901.05(B)(3).  Section 2901.09(B) (entitled "No duty to retreat") provides that: "[f]or purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another."

The application of the Castle Doctrine has been described by one Ohio court in the context of a state criminal action as follows:

> To establish self-defense, the defendant bears the burden to prove, by a preponderance of the evidence, that " '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942

N.E.2d 1075, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). The "elements of self-defense are cumulative. * * * [Thus, i]f the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986) (emphasis sic). Accord *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73; *State v. Hargrave*, 4th Dist. No. 11CA907, 2012-Ohio-798, 2012 WL 642680, ¶ 16.

{¶ 38} R.C. 2901.05(B)(1), however, relieves the defendant's burden to prove the foregoing three elements.  Under R.C. 2901.05(B), a defendant is rebuttably presumed to have acted in self-defense

> "when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force."

This rebuttable presumption means that the defendant no longer carries the initial burden to produce evidence that (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.  Instead, the rebuttable presumption, by definition, presumes the existence of these facts.

{¶ 39} For the presumption to apply, a defendant must establish that (1) the person against whom the defendant used defensive force was in the process of unlawfully entering, or had unlawfully entered, the residence or vehicle that the defendant occupied, (2) the defendant was in the vehicle lawfully, and (3) the victim did not have a right to be in the vehicle.  If the presumption applies, the state may rebut it.  R.C. 2901.05(B)(3); *State v. Wilson*, 8th Dist. No. 97350, 2012-Ohio-1952, 2012 WL 1567202, ¶ 43 (construing complementary statute, R.C. 2901.09(B), the no-duty-to-retreat statute); *State v. Petrone*, 5th Dist. No.2011CA67, 2012-Ohio-911, 2012 WL 730415, ¶ 73 (recognizing that state may rebut presumption by showing that defendant at fault and did not have bona fide belief that defendant in imminent danger and that only means of escape was use of force).

*State v. Bundy*, 974 N.E.2d 139, 151-152 (Ohio App. 4th Dist. Aug. 20, 2012).  *See also State v.*

*Bushner*, 2012 WL 6628876 at * 4 (Ohio App. 9th Dist. Dec. 19, 2012); *State v. Walker*, 2012

WL 4243709 at * 9-10 (Ohio App. 8th Dist. Sept. 20, 2012).

Plaintiff argues that, pursuant to the Castle Doctrine, he was entitled to use force to remove Ms. Gooden from his residence. He maintains Officer Mummert was aware of the fact that Ms. Gooden was trespassing when Plaintiff removed her from his home and, therefore, should have known Plaintiff was protected by an affirmative defense under Ohio law. Thus, Plaintiff argues, a reasonable officer in Officer Mummert's position would have known that probable cause did not exist to arrest him.

The Sixth Circuit has considered the circumstances under which an officer has probable cause to arrest an individual who may have an affirmative justification for a suspected offense. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir. 1999); *Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999); *Pritchard,* 2011 WL 2039066 at * 12; *Frodge*, 2012 WL 4773558 at * 7-8; *Rhodes*, 2012 WL 2302266 at *2-3 (6th Cir. June 19, 2012). The court recently summarized the law on this issue as follows:

> In a line of cases, our Court has addressed . . . whether an officer has probable cause to arrest an individual who may have an affirmative justification for a suspected criminal act. *See Fridley*, 291 F.3d at 872; *Painter v. Robertson*, 185 F.3d 557 (6th Cir.1999); *Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir.1999). In both *Dietrich* and *Painter*, the arrestee was charged with carrying a concealed weapon despite the presence of a statute that provided that an individual engaged in a business activity that is particularly susceptible to criminal attack has an affirmative defense to the charge. *Painter*, 185 F.3d at 564–65; Dietrich, 167 F.3d at 1010–11. In both cases we denied qualified immunity, holding that the arresting police officers lacked probable cause because the officers were aware of sufficient facts and circumstances to establish that the arrestees had a statutorily legitimated affirmative justification for the suspected criminal act at the time of the arrest. *Painter,* 185 F.3d at 571; *Dietrich*, 167 F.3d at 1012.
>
> [3] In *Fridley*, we discussed the meaning of the two cases. We identified the general rule as follows: "probable cause determinations include 'facts and circumstances establishing a statutorily legitimated affirmative justification for the suspected criminal act.' " 291 F.3d at 873 (quoting *Painter*, 185 F.3d at 570). Then we explained two corollaries to this rule. First, " 'a peace officer, in assessing probable cause to effect an arrest, may not ignore information known to

him which proves that the suspect is protected by an affirmative legal justification.'" *Id.* (quoting *Painter*, 185 F.3d at 571). Next, we noted that **the general rule " 'does not mandate that law enforcement operatives should conduct quasi-trials as a necessary predicate to the warrantless arrest of perpetrators.... Rather, [the] court ... merely resolves that, where a reasonable officer would conclusively know that an investigative target's behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that person for that behavior.' "** *Id.* (quoting *Painter,* 185 F.3d at 571 n. 21). In these cases, when we refer to whether an officer would conclusively know that the defendant is protected by an affirmative defense, we have focused entirely on the facts and circumstances known to the officer at the time of the arrest. . .

*Pritchard*, 2011 WL 2039066 at * 12 (emphasis added).

The Court rejects Plaintiff's argument that the moving Defendants lacked probable cause to arrest him because a reasonable officer should have known Plaintiff had an affirmative defense under the Castle Doctrine. Ms. Gooden's written statement indicates she went inside Plaintiff's residence; argued with him; and, he told her to leave. According to Ms. Gooden, Plaintiff then got angry; "put his hands around her neck;" and "threw her out of the house." (Doc. No. 21-4 at 1-2.) Ms. Gooden's statement provided that she then ran to her car. She claims Plaintiff followed her; grabbed the driver's side window; and "punched" her front windshield with his bare hands. (Doc. No. 21-4 at 2).

Officer Mummert avers that, when Ms. Gooden arrived at the station, she was "visibly upset" and "shaken."[9] (Doc. No. 20-1 at ¶ 6.) He also indicates he asked Ms. Gooden to repeat her description of the incident, and that she was "accurate and consistent in her description of the

---

[9]   Plaintiff notes that, when he testified during a November 2011 Domestic Violence Civil Protection Order Hearing, Officer Mummert described Ms. Gooden as nervous, anxious and worrisome. (Doc. No. 21 at 19.) Plaintiff maintains this testimony is contradictory to Mummert's statement in his Affidavit that Ms. Gooden was "visibly upset" and "shaken." The Court does not find these two descriptions of Ms. Gooden's mental state to be inherently contradictory.

events." (Doc. No. 20-1 at ¶ 6.)  Officer Mummert further states he "reasonably believed that Joshua struck the windshield as indicated by Charlene, even though it was unlikely that he caused the crack with his bare hand."  (Doc. No. 20-1 at ¶ 8.)

Based on the above, the Court cannot say a reasonable officer in Defendant Mummert's position would "conclusively know" that Plaintiff had a legally cognizable affirmative defense to the charge of domestic violence.  Although Mummert may have been aware that Ms. Gooden had trespassed when she entered Plaintiff's home without permission, a reasonable officer in Mummert's position could not have conclusively known that Plaintiff was entitled under the Castle Doctrine to use physical force to remove his wife from the property.  Plaintiff did not report to Officer Mummert (and does not argue herein) that he believed he was in imminent danger of harm.  Moreover, there is no indication in the record of any information known to Mummert at the time that would have caused him to believe this to be the case.  While Plaintiff argues he is rebuttably presumed to have acted in self-defense by virtue of the Castle Doctrine, Officer Mummert was not required to "conduct a quasi-trial" at the scene of the arrest to determine whether the presumption was or was not rebuttable under the circumstances. Accordingly, the Court finds a reasonable officer in Mummert's position would not have conclusively known Plaintiff was protected by an affirmative defense under the Castle Doctrine when he physically forced Ms. Gooden out of his residence, particularly in light of the lack of any evidence Plaintiff believed he was in any danger.

Plaintiff argues, however, that probable cause did not exist for the additional reason that Officer Mummert's own testimony indicates he did not believe Ms. Gooden's story and, therefore, further investigation was warranted.  Specifically, Plaintiff relies on Officer

Mummert's testimony during a November 2011 Domestic Violence Civil Protection Order Hearing during which he was asked whether he believed Ms. Gooden was truthful.  Mummert responded as follows: "At times. It's hard to tell.  I never want to doubt a victim of domestic violence. Um, but there were just certain parts of the story that I just didn't feel completely comfortable with." (Doc. No. 21 at Exh. 2, 6:15 to 6:28.)  Plaintiff argues this testimony suggests Officer Mummert doubted Ms. Gooden's credibility and, therefore, Defendants should have conducted a more complete investigation before obtaining an arrest warrant.

The Court rejects this argument.  It is not clear what "parts of [Ms. Gooden's] story" Officer Mummert felt uncomfortable with.  Earlier in the hearing, Mummert testified he believed it was "highly unlikely" Plaintiff could have cracked Ms. Gooden's windshield with his bare hand.[10] Despite Plaintiff's protestations to the contrary, the Court finds this is consistent with the Affidavit submitted by Officer Mummert in support of Defendants' Motion for Summary Judgment.  In that Affidavit, Mummert acknowledges he thought "it was unlikely that Joshua Gooden caused the crack solely with his bare hand." (Doc. No. 20-1 at § 8.)  However, he goes on to state that this "did not refute that Joshua may have struck the windshield with an object in his hand or that the small crack already existed and Charlene did not notice it until after Joshua struck the windshield with his fist."  *Id.*  Regardless, Mummert avers that "I reasonably believed that Joshua struck the windshield as indicated by Charlene, even though it was unlikely that he caused the crack with his bare hand."  *Id*.

---

[10]  Other than this reference, the Court is not aware of (and Plaintiff does not direct this Court's attention to) any testimony in which Officer Mummert identifies any other aspects of Ms. Gooden's that he did not feel "completely comfortable with."

27

The Court finds Officer Mummert's doubts that Plaintiff could have cracked Ms. Gooden's windshield with his bare hand do not negate a finding of probable cause.  Mummert did not testify that he thought Ms. Gooden was untruthful when she stated Plaintiff became angry; "put his hands around her neck," and "threw her out of the house."  (Doc. No. 21-4 at 1-2.)  Given Ms. Gooden's statement detailing this conduct, combined with Mummert's observation that she was accurate and consistent in her description of events, the Court cannot find that Mummert's later expressed doubts somehow rendered probable cause lacking or impacted the validity of the warrant.  Moreover, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371.

Accordingly, under the first tier of the qualified immunity analysis, the Court finds that no constitutional violation occurred and Defendants are entitled to immunity with respect to Plaintiff's false arrest and false imprisonment claims under § 1983.  The Court need not reach the second tier of the qualified immunity analysis; i.e. whether the constitutional right violated was clearly established.  As the Supreme Court has explained, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 553 U.S. 194, 201 (2001).  *See also Pearson*, 555 U.S. at 236; *Klein v. Long*, 275 F.3d 544, 552 (6th Cir. 2001).

Therefore, the Court finds Defendants Mummert, Hoover, and DeForest are entitled to summary judgment in their favor on the basis of qualified immunity with respect to Plaintiff's  § 1983 claim for false arrest/false imprisonment.

## 2.        Malicious Prosecution (Count I)

28

In Count I, Plaintiff also alleges a § 1983 claim for malicious prosecution. "In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or prosecution." *Voyticky,* 412 F.3d at 675. *See also Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). As detailed *supra*, the Court has found there was no constitutional violation because Officer Mummert acted pursuant to a facially valid arrest warrant. Accordingly, the moving Defendants are entitled to summary judgment on the basis of qualified immunity with respect to Plaintiff's malicious prosecution claim.

### 3. Equal Protection (Count II)

In Count II, Plaintiff alleges a § 1983 claim for violation of his equal protection rights under the Fourteenth Amendment. Specifically, Plaintiff claims he was arrested without probable cause "pursuant to a policy to make an arrest in cases where domestic violence is alleged." (Doc. No. 1-1 at ¶ 50-51.) He asserts "[t]he policy that requires a preference for arrest has a disproportionate impact on males based on gender bias in cases of alleged domestic violence." *Id*. at ¶ 52. Plaintiff then claims that Defendants possess a "discriminatory intent" and "apply a policy of making an arrest in all cases of domestic violence which resulted in Plaintiff's wrongful arrest based on his gender." *Id*. at ¶ 54.

Defendants move for summary judgment on this claim. The entirety of their argument on this issue is as follows:

> In Count II, Plaintiff alleges that he was arrested pursuant to a policy that required an arrest to be made in all cases where domestic violence is alleged, even though probable cause does not exist. However, the evidence in the case at bar establishes that the City of Brunswick does not have a policy requiring an arrest in all cases where domestic violence is alleged. Arrests are to be made only where probable cause exists. As such, Plaintiff's equal protection claim fails.

(Doc. No. 20 at 15.) Moreover, in his Affidavit, Officer Mummert avers that "[t]he City of

Brunswick does not have a policy requiring an arrest in all cases where domestic violence is alleged. Arrests are to be made only where probable cause exists." (Doc. No. 20-1 at ¶ 19.)

Plaintiff's Brief in Opposition does not address this issue.

The Court finds the moving Defendants are entitled to summary judgment with respect to this claim. Defendants have come forward with evidence, in the form of Officer Mummert's affidavit, that the City of Brunswick does not have a policy requiring an arrest in all domestic violence cases, as alleged by Plaintiff. Plaintiff does not present any evidence or argument in response. Moreover, even assuming the City of Brunswick did have a preferred arrest policy for domestic violence cases, Plaintiff fails to cite a single case indicating that the application of such a policy under the circumstances presented herein would implicate the Equal Protection clause. In the absence of any authority to the contrary, this Court cannot find that it would be "clear to a reasonable [official] that his conduct was unlawful in the situation" alleged by Plaintiff. *See Klein,* 275 F.3d at 552.

Accordingly, and in the absence of any opposition from Plaintiff, the Court finds the moving Defendants are entitled to qualified immunity with respect to Plaintiff's equal protection claim.

### 4. Supervisory Liability (Count III)

In Count III of the Complaint, Plaintiff alleges a claim for supervisory liability under § 1983 against Defendants Hoover and DeForest. (Doc. No. 1-1 at ¶¶ 59-63.) These Defendants argue they are entitled to summary judgment with respect to the claim because Plaintiff has failed to establish that either of them actively engaged in any unconstitutional behavior. (Doc. No. 20 at 15-16.) Plaintiff opposes, arguing that Defendant Hoover "was an active participant in the

30

decision to arrest" Plaintiff.  (Doc. No. 21 at 22.)  Plaintiff further argues that Defendants refused to allow Plaintiff to depose Defendant DeForest and, therefore, he should not be permitted to escape liability.  (Doc. No. 21 at 22.)

The Sixth Circuit has described the reach of supervisory liability under § 1983 as follows:

> *Respondeat superior* is not a proper basis for liability under § 1983.  Nor can the liability of supervisors be based solely on the right to control employees or simple awareness of employees' misconduct.  Furthermore, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006).

"A prerequisite to supervisory liability is, of course, an underlying constitutional violation." *Hightower v. City of Columbus*, 2013 WL 5963215 at * 14 (S.D. Ohio Nov. 7, 2013).  *See also McQueen*, 433 F.3d at 470 (stating that "These principles make clear that a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor"); *Rodriguez v. City of Cleveland*, 2011 WL 3792371 at * 20 (6th Cir. Aug. 26, 2011). Without unconstitutional conduct by a supervisor's subordinate, supervisory liability cannot exist. Because the Court has found there was no underlying constitutional violation in this case as set forth above, Plaintiff's supervisory liability claims against Defendants Hoover and DeForest must necessarily fail.  Thus, the Court finds Defendants Hoover and DeForest are entitled to summary judgment in their favor with respect to Plaintiff's § 1983 supervisory liability claim.

### 5.    Conclusion

Accordingly, and for all the reasons set forth above, the Court finds the moving Defendants are entitled to summary judgment on the basis of qualified immunity with respect to Plaintiff's §

1983 claims for false arrest/false imprisonment; malicious prosecution; and, equal protection.[11]  In addition, the Court finds Defendants Hoover and DeForest are entitled to summary judgment with respect to Plaintiff's § 1983 claim for supervisory liability.

**B.      State Law Claims (Counts IV, V, VI, and VIII)**

Plaintiff asserts state law claims against the moving Defendants for (1) malicious prosecution (Count IV); (2) false arrest (Count V); (3) false imprisonment (Count VI); and, (4) abuse of process (Count VIII).  Defendants Mummert, Hoover and DeForest maintain these claims fail as a matter of law because (1) they obtained a valid warrant for Plaintiff's arrest; and, (2) that warrant was supported by probable cause.  They further assert they are entitled to summary judgment with respect to these claims because they have immunity pursuant to Ohio's Political Subdivision Tort Liability Act, codified in Ohio Rev. Code Chapter 2744.  (Doc. No. 20 at 19-25.)

Plaintiff argues Defendants are not entitled to summary judgment on his state law claims because the warrant issued for his arrest was invalid since it was not "approved or reviewed by a Judge, Magistrate or Court official at ANY TIME prior to, or after" his arrest.  (Doc. No. 21 at 22.)  Plaintiff does not address Defendants' arguments regarding political subdivision employee

---

[11]  Although not clearly explained, Count I of the Complaint also summarily states § 1983 claims for alleged violations of Plaintiff's "right to not be '. . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation' (U.S. Constitution, Amendment V), as well as those inalienable and residual rights conferred (U.S. Constitution, Preamble and Amendments IX & X), and Plaintiff's fundamental right to privacy." (Doc. No. 1-1 at ¶ 46.)  These claims appear to be based solely on the factual allegations relating to Plaintiff's October 21, 2011 arrest and imprisonment.  As the Court has found no constitutional violation with respect to Plaintiff's arrest and imprisonment, Plaintiff's remaining individual capacity § 1983 claims against the moving Defendants as set forth in Count I also fail against the moving Defendants.

immunity under O.R.C. Chapter 2744.

Ohio's Political Subdivision Tort Liability Act, codified in Ohio Rev. Code Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *See Rankin v. Cuyahoga County Dept of Children and Family Services*, 118 Ohio St.3d 392, 394 (2008). The first tier of the analysis provides that political subdivisions are generally not liable in damages for causing personal injuries. Revised Code § 2744.02(A)(1) provides that:

> (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death or loss to person or property allegedly caused by an act or omission of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A)(1). Once immunity is established, the second tier of the analysis asks whether any of the five exceptions to immunity set forth in § 2744.02(B) apply. These exceptions occur when: (1) the injuries are caused by the negligent operation of a motor vehicle; (2) the injuries are caused by the negligent performance of a proprietary function; (3) the injuries are caused by the failure to keep public roads, highways and streets open, in repair and free from nuisance; (4) the injuries are caused by negligence on the grounds of a building used for governmental purposes; or (5) the injuries are those for which liability is expressly imposed by the Ohio Revised Code. *See* Ohio Rev. Code § 2744.02(B). If any of the exceptions are applicable, then, under the third step in the analysis, the political subdivision has the burden of demonstrating that any of the defenses set forth in § 2744.03 apply. *See Rankin*, 118 Ohio St.3d at 396.

33

Employees of a political subdivision[12] may be entitled to immunity under Ohio Rev. Code §

2744.03(A)(6).  As the Ohio Supreme Court has explained:

> For the individual employees of political subdivisions, the analysis of
> immunity differs. Instead of the three-tiered analysis . . . , R.C.
> 2744.03(A)(6) states that an employee is immune from liability unless the
> employee's actions or omissions are manifestly outside the scope of
> employment or the employee's official responsibilities; the employee's acts
> or omissions were malicious, in bad faith, or wanton or reckless; or liability
> is expressly imposed upon the employee by a section of the Revised Code.

*Rankin*, 118 Ohio St.3d at 398 (quoting *Cramer v. Auglaize*, 113 Ohio St.3d 266, ¶ 17 (2007)).

*See also* Ohio Rev. Code § 2744.03(A)(6).

Defendants maintain that none of the exceptions to employee immunity set forth in §

2744.03(A)(6) apply because (1) the moving Defendants acted within the scope of their official

duties at all times relevant to the Complaint; (2) liability is not expressly imposed upon them by

any Ohio statute; and, (3) Plaintiff fails to allege any facts supporting his claim the moving

Defendants acted maliciously.  (Doc. No. 20 at 23-25).  Plaintiff does not oppose Defendants'

arguments on this issue.

The Court agrees that Defendants Mummert, Hoover, and DeForest are entitled to immunity

from Plaintiff's state law claims under § 2744.03(A)(6).  These Defendants were clearly acting

within the scope of their employment at all times relevant to the Complaint.  Plaintiff has not

cited any Ohio statute which expressly imposes liability on any of these Defendants for the

alleged conduct at issue.  Finally, Plaintiff has not argued, nor has it directed this Court's

attention to any evidence to suggest, that any of the moving Defendants acted maliciously,

---

[12] Plaintiff does not challenge that the City of Brunswick is a "political subdivision"
within the meaning of the Act.

34

recklessly, or in bad faith.  Accordingly, the Court finds Defendants Mummert, Hoover, and DeForest are entitled to political subdivision employee immunity under § 2744.03(A)(6) with respect to Plaintiff's state law claims.

Therefore, and for all the reasons set forth above, the Court finds Defendants Mummert, Hoover and DeForest are entitled to summary judgment with respect to Plaintiff's state law claims as set forth in Counts Four, Five, Six and Eight of the Complaint.

### V. Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of Defendants Hoover, Mummert, and DeForest in their individual capacities only with respect to the following claims: (1) Plaintiff's § 1983 claims for false arrest/false imprisonment; malicious prosecution; equal protection; supervisory liability; due process, invasion of privacy; and "residual rights;" and, (2) Plaintiff's state law claims for malicious prosecution; false arrest; false imprisonment; and, abuse of process.

The following claims remain pending in this action: (1) Plaintiff's official capacity claims against the moving Defendants; (2) any claims asserted against the Defendant City of Brunswick; and, (3) Plaintiff's claims against Defendant Charlene Gooden.

IT IS SO ORDERED.

s/ Greg White
United States Magistrate Judge

Date: April 8, 2014